MARY A. RUSH, *as Administratrix of the estate of Michael O'Connor, deceased,* v. THE MISSOURI PACIFIC RAILWAY COMPANY.

1. NEGLIGENCE; *Question of Fact, or of Law.* A railway company in the construction of its railway did not use any blocking or other protection between the main rails of its tracks and the guard rails. Whether this was negligence or not in the abstract, and whether the question is one of fact for the jury, or one of law for the court, not decided.

2. KNOWLEDGE; *Assuming Risk.* But where a railway is so constructed and a competent railroad man is employed to work in one of the company's yards as yard switchman, and in such yard there are many switches and about twenty guard rails, and the employé voluntarily and without complaint does switching in such yard every day for about two and one-half months, when he steps between the main rail and the guard rail of one of the company's railway tracks, and because thereof receives injury, *held,* that the condition of the railway tracks and the danger must have been known to the employé, and therefore that he assumed the risk; that he waived any negli-

9 — 36 KAS.

gence that might otherwise be imputable to the railway company; that as between the railway company and himself the railway company cannot be charged with culpable negligence, for the reason that one party cannot be guilty of culpable negligence as toward another party unless the first party is guilty of some breach of duty as toward the other party; and that all these questions as presented in this case are questions of law for the court, and not questions of fact for the jury.

### Error from Bourbon District Court.

ACTION brought under § 422 of the civil code, by *Mary A. Rush*, as administratrix of the estate of Michael O'Connor, deceased, against *The Railway Company*, to recover $10,000 damages for wrongfully and negligently causing the death of said decedent. Trial at the December Term, 1884, and judgment for the defendant. The plaintiff brings the case here. The material facts are stated in the opinion.

*J. D. McCleverty*, and *McClure & Austin*, for plaintiff in error.

*W. C. Perry*, and *David Kelso*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Bourbon county, under § 422 of the civil code, by Mary A. Rush, administratrix of the estate of Michael O'Connor, deceased, to recover damages against the Missouri Pacific Railway Company for wrongfully and negligently causing the death of the deceased. The damages sought to be recovered are claimed for the benefit of Michael O'Connor sr., the father and next of kin to the deceased. The deceased had been in the employment of the defendant railway company, as yard switchman, at Fort Scott, Kansas, for some two or three months prior to the accident which caused his death. On March 18, 1884, in pursuance of an order given to him by E. W. Head, the yard master, he went with the switch engine, No. 45, to place a car upon the track of the St. Louis, Fort Scott & Wichita railroad. After throwing open the connecting switch of the two roads, he walked along the side of the engine and

cars for the purpose of uncoupling a defective car from the engine and placing it at a point designated by the yardmaster. While performing this duty he stepped upon the track, and between the cars, and while attempting to remove the coupling-pin his foot was caught and fastened between the main rail and the guard rail, so that he was unable to extricate it, and the cars, being at the time in motion, passed over his body and instantly killed him. There was no blocking or other protection between the main rail and the guard rail for the purpose of preventing such an accident. At the time of his death, O'Connor was 25 years old, healthy, temperate, strong, and a competent and careful railroad man, and was receiving wages at the rate of $50 per month from the railway company. He was unmarried, and his father, who survived him, was the next of kin to him. This suit was brought by his administratrix for his father's benefit. His father is about 67 years old, has no property, is unable to support himself, and was mainly dependent upon his son for his maintenance. From the time the deceased was 15 years old up to the time of his death, one-half of his earnings were given for the support of his father. The case was tried by the court and a jury. After the plaintiff had submitted all her evidence to the jury, the defendant interposed a demurrer thereto, on the ground that the same did not prove a cause of action; which demurrer was overruled by the court. Thereafter the defendant introduced its evidence to the jury, and among other things introduced evidence tending to show that the failure to block between the main rail and the guard rail was not an act of negligence, and that such failure did not increase the danger of the employés; and also introduced evidence tending to show that many railroads, including that of the defendant, did not use any such protection. After the introduction of all the evidence on the part of the plaintiff and the defendant, the court instructed the jury to find a verdict for the defendant, which was accordingly done, and to which instruction the plaintiff duly excepted, and thereafter filed a motion for a new trial, which was overruled by the court; to which ruling she also duly ex-

cepted.    The court rendered judgment in favor of the defendant and against the plaintiff for costs; and to reverse this judgment and the foregoing rulings of the trial court the plaintiff brings the case to this court.

The questions presented in this case are as follows:

1. Under the circumstances of this case, was the failure of the railway company to use blocking, or some other protection, between the main rail and the guard rail where the plaintiff's intestate was injured, culpable negligence as toward the plaintiff's intestate?

2. If so, did the plaintiff's intestate, by any acts of his, waive such negligence?

3. If the defendant was guilty of culpable negligence, and if the plaintiff's intestate did not waive it, then was he guilty of contributory negligence in attempting, at the time and place and in the manner he did, to uncouple the cars, considering the condition of the railway tracks?

4. Were these questions questions of fact for the jury, or questions of law for the court to determine?

In order to consider these questions intelligently, it will perhaps be necessary to restate some of the facts in greater detail, and to state some additional facts.    The railway was not out of repair: it was in just the same condition as it was when it was originally constructed, and it was constructed in the yard where the plaintiff's intestate worked precisely as it was constructed in all the other yards belonging to the defendant, and in precisely the same manner as many other railways belonging to other companies are constructed.    In the vicinity of the place where the accident occurred there were in all about eight or ten guard rails and several switches, and in the entire yard where the plaintiff's intestate worked there were about twenty guard rails and a great many switches, and all were constructed alike so far as blocking or other protection was concerned, and he had worked in this yard for about two and one-half months prior to the accident.    He was twenty-five years old, and a strong, healthy, temperate, competent and careful railroad man.    During his employment in this

yard he had worked daily therein, and in all parts thereof, and during each day he had assisted in switching many railway cars. The accident occurred on March 18, 1884, in broad daylight and at about 1 o'clock in the afternoon, and the condition of the railway track where the accident occurred was in plain view. The plaintiff's intestate evidently had full and complete knowledge of the exact condition of all the railway tracks in that yard — of the main track and the switch tracks, of the main rails and the guard rails, and of the want of blocking or other protection where guard rails were used, and he seemed to be satisfied; at least, he made no complaint of the condition of the railway tracks or of their want of blocking or other protection, and never gave to the railway company any notice of their supposed unsafe condition, and there was no promise at any time made for or on the part of the railway company that the tracks should be made safer. Upon these facts this case must be decided.

As to whether the railway company was guilty of negligence or not in not making its tracks safer, we think it is 1. Negligence; question of fact, or of law. hardly necessary to express any opinion. Neither do we think that it is necessary to express any opinion as to whether this question is one of law for the court or one of fact for the jury; for if the railway company was not guilty of any negligence, then the plaintiff cannot recover; and if the railway company was guilty of negligence, then the plaintiff's intestate must also have been guilty of negligence, contributory negligence; for he had the same means of knowing the condition of the railway tracks in that vicinity as the company had; and he was as competent to determine their safety or unsafety as the company was; and therefore the plaintiff cannot recover. He was not a child of tender years, nor an inexperienced or ignorant person; nor was he ignorant of the manner in which this particular railway was constructed; nor is there even room to suppose that there was any lapse of memory with regard to this particular guard rail; for it was not different from the other guard rails in that yard, nor different from any of

the other guard rails of the defendant's five thousand miles of railway; nor different from the guard rails of many of the other railways in this country; nor different from what it was when it was originally constructed.

For the purposes of this case, but as abstract propositions, we shall assume, but without deciding the questions, that the railway company was negligent in not blocking its guard rails, or in not making them safer in some other manner; and that the company was guilty of negligence as toward the plaintiff's intestate when it first employed him, unless it first informed him of the danger and of the exact condition of its railway tracks, and that this negligence continued as toward the plaintiff's intestate until he had full and complete knowledge of the danger and of the condition of the railway tracks; but in all probability he obtained knowledge of the condition of the railway tracks on the very first day of his employment; for it is admitted that he was a competent railroad man, and with such knowledge he remained in the company's employment not merely a day or several days, but about two and one-half months. The question then arises, did the company after the plaintiff's intestate acquired such knowledge remain negligent as toward him? It is true that masters must not expose their servants or employés to any unnecessary hazards. It is also true that every master must exercise reasonable and ordinary care and diligence to provide his servant or employé with a reasonably safe place at which to work, and with reasonably safe machinery, tools, implements, appliances and instrumentalities with which to work; but in the very nature of things men must sometimes work in dangerous places, and with dangerous instruments or machinery, and in all such cases they may rightfully engage to do so, and be employed to do so; and when rightfully employed to do so, neither the employer nor the employé can properly be charged with culpable negligence as toward the other. In such cases, all that can be required of the employer is that he shall see that the employé is informed with respect to all the dangers and hazards incident to the work; and when this is done, the employé will assume

all the risks and hazards of his employment. The employer must always act in good faith toward his employé, and see as far as he reasonably can that the employé does not take any unknown risks or hazards; but where the employer and the employé are equally competent to judge of the risks and hazards, and both have equal knowledge of the surroundings, the employer cannot be culpably negligent as toward the employé, although the work may be dangerous or hazardous, and although it might be made safer by the employer if he should choose to do so. In some cases it is very difficult to determine which of two ways of doing a thing is the better and the safer way, (and it is claimed by the defendant that this is one of such cases,) and in such cases witnesses could easily be found who would testify on either side, and that either way was a safer and a better way than the other. Now in such cases an employer should certainly have the privilege of adopting the way or the plan which might seem best to him; and if after adopting a plan he should inform his employé as to which of the plans he had adopted, or if the employé should obtain knowledge as to which of the plans had been adopted without being expressly so informed, it could hardly be said that the employer was guilty of any culpable negligence as toward his employé, although it might be that the plan not adopted was the safer and the better plan. Indeed, in such a case, the employer and the employé might be in full and complete agreement and concordance that the plan adopted was the safer and the better plan, and in such a case neither should be charged with culpable negligence as toward the other. In such a case it should be assumed that the employé was hired and paid for taking the risk, and that he voluntarily assumed the risk. Culpable negligence on the part of one person as toward another always involves *a breach of duty* on the part of the former as toward the latter. Where there is *no breach of duty*, there can be no culpable negligence, and it is only for negligence of a culpable character that any person can be held responsible in law. Where an employé is hired and paid for assuming a known danger, and the thing itself is not con-

trary to law, it cannot properly be said that the hirer has been guilty of any breach of duty as toward the person hired, and therefore it cannot be said that the hirer has been guilty of any culpable negligence as toward the person hired.

It is claimed on the part of the plaintiff's intestate, and perhaps rightly, that where the danger is not obvious or imminent the employé may rightfully continue in the employment of the master without being chargeable with contributory negligence. Some of the authorities lend support to this view. But still, if we recognize this view as correct, and if the danger is as well known to the servant as it can be to the master, another principle enters in to prevent the servant from recovering from the master for any injuries that might result from the supposed danger, and that principle is this : If the servant has full knowledge of the danger, and continues in

2. Knowledge; assuming risk. the master's employment without complaint, receiving from the master full pay for his services, he assumes the risk himself of the known danger, and waives any negligence that might otherwise be imputable to the master. This distinction between contributory negligence on the part of the servant and the waiver of the master's negligence on the part of the servant has been recognized in some of the books; but while it may be admitted that there is ample room for such a distinction, still it is doubtful whether the distinction can be of much practical value. In all cases of contributory negligence the employé has in some sense waived the negligence of the master; for by encountering the danger he says in effect, "There is no danger except such as I will wholly assume myself;" and in all cases of the waiver of the master's negligence, the servant has in some sense by his own negligence contributed to the resulting injury. The better view, perhaps, of the subject, is this: When the danger is not obvious or imminent, and both the employer and the employé, with full knowledge of the same, enter into the contract of employment, or continue the same, neither party is guilty of culpable negligence as toward the other; while if the danger is obvious and imminent, and it is

encountered by the servant, then both parties are equally guilty of culpable negligence—that of the employé being culpable contributory negligence. In all cases, the continuance on the part of the servant in the master's employment, with full knowledge of the danger, is either negligence or it is not negligence. If it is negligence, and injury results, then no recovery can be had, because of the culpable contributory negligence of the servant; but if it is not negligence on the part of the servant, then neither can it be negligence on the part of the master. What the servant may lawfully do, without negligence, the master may lawfully hire him to do, without negligence. The master cannot be bound to take greater care of the servant than the servant is of himself. If the danger is such that an ordinarily prudent man could assume it without being guilty of negligence, then the same facts and the same reasoning which would show this would also show that there could not be any culpable negligence or any breach of duty on the part of another person for hiring him to assume it. There cannot be negligence on the part of the one and not on the part of the other, where both are capable of understanding the danger, and both are fully informed as to all the facts. There are cases where a servant, knowing the danger, may nevertheless recover; but this is not one of such cases. Usually, where some instrument or appliance has become unsafe from use or otherwise, and the danger from its use is not imminent or obvious, the servant may continue in the master's employment and use it for a short time with the expectation that the master will restore the defective instrument or appliance to its former condition. Also, where the master has been informed with regard to some defect in some instrument or appliance, and he agrees to remedy the defect, the servant may continue for a reasonable time in the master's employment, so as to give him an opportunity to fulfill his promise. Also, where the danger is one to which the servant is not exposed in the ordinary course of his employment, but is one which he is at the time required to immediately encounter by a special command of his master or of a

superior servant, without time for reflection or choice on the part of the servant, he may obey the command without being guilty of contributory negligence, or without forfeiting his right to recover in case injury results. But not one of these cases is the present case. The plaintiff's intestate could have had no hope in the present case that the railway tracks would ever be changed; there was no promise that they would be changed; they were just as they were when they were originally constructed; and in the ordinary course of his employment the plaintiff's intestate was using them every day, and knew that he must so use them every day. We have carefully considered this case, and after such careful consideration we have come to the conclusion that the defendant has not been guilty of any breach of duty as toward the plaintiff's intestate, and therefore has not been guilty of any culpable negligence as toward him; and under the facts of this case we think this question is a question of law for the court, and not one of fact for the jury; and as these views harmonize with the decision of the court below, its judgment must be affirmed.

All the Justices concurring.