JOHN T. WELD v. THE MISSOURI PACIFIC RAILWAY COMPANY.

1. EXPERTS — *No Error in Excluding Evidence.* In an action against a railway company to recover damages for injuries caused by the negligence of a coëmployé, in which action it is alleged in the petition that it was the duty of the engineer in charge of a switch engine to stop it, and the plaintiff, the injured party, swears on the trial that the engineer did stop the engine, it is not error for the trial court to exclude the evidence of experts, that it was the duty of the engineer to stop the engine under such circumstances.

2. Unsafe Bridge — *Exclusion of Evidence, Not Error.* It is not error in the trial court in such a case, to exclude evidence about the unsafe condition of the bridge upon which the plaintiff was injured, when the bridge had remained in the same condition for two years prior to the injury, and the plaintiff had crossed it nearly every day during that time, and knew its condition, and had the day before the injury occurred told the engineer in charge of the engine on which he was employed, that it was unsafe; and that he would thereafter get off the engine at the west end of it, and would not get off the engine on the bridge any more.

· 3. Bridge — *Repairs — Evidence Excluded — No Error.* It is not error, under the facts of this case, for the trial court to refuse to allow the plaintiff to prove that sometime in the winter after the injury occurred, the railway company planked the bridge, and made some other repairs to it.

*Error from Atchison District Court.*

Action to recover damages for personal injuries. The plaintiff, *John T. Weld,* alleged that on October 31, 1880, he was, and for a long time prior thereto had been, in the employment of the defendant railway company for hire and reward as switchman or yardman in defendant's track yard in the city of Atchison; that his duty was to attend the yard engine in switching and making up the express trains of the defendant railway company, which usually left the city of Atchison for the city of St. Louis daily about 3:30 o'clock P. M., and that on the day aforesaid he was injured by the carelessness of a coëmployé. The petition alleged the injury in the following words:

"That in the doing of such work it was then, and for a long time prior thereto had been, his duty to go upon the yard engine to the 'Y' or switch, where the railroad track operated by the defendant, which is south of Utah avenue in said city of Atchison, connects with the railroad track operated and used by the defendant, running west of Third street in said city, and at a point where such last-named track passes over a bridge which spans White Clay creek, between Third and Fourth streets in said city, and in the performance of such work it was the duty of such person or persons operating such engine to stop the same at or near the west end of such bridge, and to there hold the said engine until plaintiff could cross

over said bridge and change or regulate the.switch at such 'Y' before mentioned; and that on said 31st day of October, 1880, and while in the discharge of his duty, and under the instructions and directions therefor given to the plaintiff by the servants and agents of the defendant, this plaintiff stepped one foot off from the foot-board of said yard engine, when and where the same was then stopped for the purpose of crossing over a portion of said bridge and changing said switch, when the servant and agent of said defendant then in charge of and operating said engine, and before plaintiff had fully alighted or had time to alight therefrom, and without any signal or notice of the starting of such locomotive, negligently and carelessly started such engine, and this plaintiff, in stepping down from such engine, stepped upon said bridge, and by reason of the careless and negligent construction of such bridge the plaintiff's foot was caught therein, and the plaintiff was then and there, without any fault or negligence on his part, thrown from such engine and upon such railroad track and under the tender of such engine, and greatly injured, crushed and bruised, his ribs being broken and his spine greatly injured, whereby the plaintiff became sick, lame," etc.

The plaintiff prayed judgment for $10,000 damages so as aforesaid sustained, for $200 expended for medical treatment, and for costs of suit. The defendant in its answer alleged, first, a general denial; second, contributory negligence on the part of the plaintiff. The plaintiff for reply filed a general denial. Trial at the June term, 1884; verdict for defendant; new trial denied; judgment entered for defendant. The plaintiff brings the case to this court.

*W. D. Webb,* and *Jackson & Royse,* for plaintiff in error.

*B. P. Waggener,* for defendant in error.

Opinion by SIMPSON, C.: The plaintiff in error was injured by one of the railroad company's locomotive tenders backing partly over him, on the 31st of October, 1880, at the city of Atchison, while he was in the discharge of his duty as a yard switchman. Shortly before the injury occurred, he had stepped upon the foot-board of the tender, with the knowl-

5 — 39 KAS.

edge of the engineer in charge of the engine and tender, that he was there to be carried thereon to change a switch east of a bridge they were approaching. The engineer knew that Weld would have to get off the foot-board and go to the switch on the opposite side of the bridge to change it. The engine as it approached the bridge was facing west, but backing to the east. Weld was on the foot-board of the engine at the east end of the tender. On the day preceding the injury Weld told the engineer in charge of the engine on the day and at the time of the injury, that the bridge was not safe, and that in the future he (Weld) would not get off the engine on the bridge, but when it became necessary would get off at the west end of the bridge. Just before the injury occurred, and as the engine approached the west end of the bridge, the engineer checked the speed of the engine, so that when it approached near the west end of the bridge it was moving at a slow rate of speed, not exceeding about two miles an hour. The engineer had reasons to believe that Weld would step off the engine at the west end of the bridge, and not go on said bridge again until he had thrown the switch. He could have stepped off the engine near the west end of the bridge with perfect safety, and thus avoided any danger or risk from the bridge. After the engine had gone on the bridge and had moved some feet thereon, and while it was still moving slowly, Weld stepped off the foot-board, his foot caught in the bridge, his heel striking one of the ties; he stumbled and fell under the tender; the bridge was not planked or covered in any manner; the ties upon which the track rested were about four inches apart; he had known for a long time previous to the injury the condition of the bridge. The trucks of the engine came in contact with him; the engine moving from two to five feet after he fell, turned him over and doubled him up, and the foot-board, and possibly the rear trucks of the tender, passed over him; he suffered great pain in the head, shoulders, hips and body. He did not sustain any permanent injury. The engineer did not know, or have any reason to believe, that Weld was in danger. When he

did ascertain that Weld was off the engine and was thrown on the bridge, he did everything in his power to avoid the injury. Weld was not thrown from said engine in any manner, and the servants and agents of the railroad company in charge of and operating said engine were not guilty of any culpable negligence which caused the injury complained of. The failure of Weld to exercise reasonable and ordinary care, contributed to his injury. These are the facts as found by the jury, in answer to particular questions. There was a general verdict for the railroad company.

Two causes for reversal are strongly urged here, and some others are suggested. The first is, the exclusion of the answers to certain questions propounded to the witnesses Frank Chase, W. J. Hulse, and C. A. Day, the first being by deposition; the other two were upon the witness stand. These questions are similar in language and import, and are each directed to the duty of a switch engineer, as to stopping or not stopping the engine under such circumstances as occurred at the time of the injury to the plaintiff in error. The witnesses were all skilled engineers of large experience, and were competent to testify as experts, if that class of evidence was admissible. Objections were sustained to the questions, and the answer of Chase as embodied in the deposition was not permitted to be read to the jury. It is urgently insisted that this was error. The petition charges the negligence of a co-employé in a very general way; there was no motion to make it more definite and certain; neither was the petition demurred to. If there was a particular act of negligence charged, it was that the engineer, while the plaintiff in error was in the act of stepping off the engine, without any signal or notice, negligently and carelessly started the engine, and the plaintiff in error by reason of the careless and negligent construction of the bridge, caught his foot therein, was thrown from such engine and upon said track and under the tender, and injured. He alleges, both directly and impliedly, that the engine was stopped; and in his own testimony he states that the

engine had stopped, but before he had fully alighted it started again. With this allegation in the petition, and this evidence of the plaintiff in error, both that it was the duty of the engineer to stop and that he did stop, we fail to see how the

1. Experts—no error in excluding evidence.

exclusion of such expert evidence, showing that it was the duty of the switch engineer to stop before reaching the switch to allow the switchman to get off, becomes material, or its rejection can be regarded as material error.

The second is, that the court below excluded evidence tending to show the unsafe condition of the bridge, by reason of its careless and negligent construction, and parts of the depositions of the witnesses Digan and Stein, who were probably both skilled men, bearing on that question, were ruled out. The plaintiff in error had stated to the engineer in charge of the switch engine the day before the injury occurred, that it was not safe. He had known the condition of the bridge for months before the injury complained of occurred. He continued work with that knowledge, and so far as the record shows, without protest to anyone having authority in such matters. If he continued in the employment of the company with knowledge that the bridge was unsafe, and was injured thereby, he was guilty of culpable contributory negligence. (*Rush, Adm'x, v. Mo. Pac. Rly. Co.*, 36 Kas. 129.) He alleged that the bridge was constructed in a careless, negligent and unskillful manner. With that knowledge he had been engaged in a duty that caused him to cross the bridge every day for about two years; only the day before he was injured

2. Unsafe bridge—exclusion of evidence, not error.

he had stated to the engineer that it was unsafe, and that he would not get off the engine on the bridge any more; the next day he did so and was injured. Under these circumstances it was not prejudicial error to exclude evidence tending to show the unsafe condition of the bridge. If it had been admitted it would not have relieved him of contributory negligence.

Another complaint is, that the trial court ruled out the evi-

dence offered to prove that the railway company made a change
in the bridge by planking it over; this being done
in the winter after the injury occurred, October
31st. The evidence was properly rejected, because
as the plaintiff knew the condition of the bridge at the time
of the injury, and had known it for a long time previous
thereto, and with that knowledge, and without protest, had
continued the employment, such additional evidence could not
have resulted to his benefit. It was immaterial what change,
repair or alteration was made to the bridge after the injury.

3. Bridge repairs
—evidence ex-
cluded—no
error.

We do not regard the other objections as being well founded.
The jury found specially every material fact against the plaintiff in error; their verdict was amply justified by the evidence.
The trial court refused a new trial, and any errors that may
be found in the record are not of the weighty character that
would justify a reversal.

It is recommended that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.