THE UNION PACIFIC RAILWAY COMPANY v. SUSAN A. MONDEN, *as Administratrix of the estate of John R. Monden, deceased.*

1. RAILROAD EMPLOYÉ, *Death of — Assumption of Risk — Instructions.* In an action against a railroad company to recover damages for the death of a person, where one of the acts of negligence charged and relied upon was that the defendant did not have a switch marker to indicate the distance to the junction with its main line, and the evidence established the fact that the decedent had been over the main line of the road a number of times, but had never made but the one trip over the branch upon which he was killed; and the court instructed the jury with respect to signs and marks to designate the approach to a junction, that it was for the jury to determine upon all the evidence, first, whether such switch marker was reasonably necessary, and whether it was negligence in not having markers at the particular junction where the decedent was killed; that if it was negligence in that respect, did the injuries which caused death result directly therefrom? and, if the jury should so find, did the decedent previous to going out upon the trip have knowledge that there were no such marks or signs and consequent danger, and so voluntarily assume the risk? *held*, that the court should have instructed the jury further as to his previous knowledge,

whether, in the exercise of reasonable care, he ought to have had knowledge that there was a switch marker; that the court should have instructed the jury that if the employé, in the exercise of reasonable care, ought to have known that there was no switch marker at the particular junction, and continued in the service of the company, he voluntarily assumed the risk.

2. ———— Instruction considered, and *held* not applicable to the facts of this case.

### Error from Douglas District Court.

ACTION by *Susan A. Monden*, administratrix of the estate of John R. Monden, against the *Union Pacific Railway Company*, for causing the death of plaintiff's intestate. Verdict and judgment for plaintiff, June 20, 1889. The defendant *Company* comes to this court. The opinion states the material facts.

*A. L. Williams*, and *Chas. Monroe*, for plaintiff in error:

It was decided by this court, in the case of *Railway Co. v. Peavey*, 34 Kas. 472, that if an employé knows that the materials with which he works are defective, and he continues his work without objection and, without being induced by his employer to believe that a change will be made, he will be deemed to have assumed the risk of such defects, and cannot recover for an injury resulting therefrom. That principle of law was quoted by this court as being one of the rules of the common law still in force, and there are no decisions to the contrary. It is the law everywhere, and is applicable to the facts of this case.

The attention of the court is called to the case of *Rush v. Missouri Pacific Railway Co.*, 36 Kas. 129; and it is submitted that the decision in that case settles this one in favor of the railroad company beyond any question. There a man had been killed by being run over by a car while he had his foot caught in an unblocked switch. The district court directed a verdict for the defendant and rendered judgment in its favor, and that judgment was sustained by this court. The question in that case was, whether the company was neg-

ligent in not blocking its switch. The plaintiff in that case had been working in the yard for about 2½ months prior to the accident. None of the switches in that yard, or in any of the other yards of that company, were blocked; and the court decided that, as to the plaintiff, the company was not negligent in failing to block its switches, and that the plaintiff assumed whatever risk was occasioned by such failure. That case is almost exactly like the present one. Reference is also made to the case of *H. & St. J. Rld. Co. v. Kanaley*, 39 Kas. 1.

The decisions of our supreme court being so strong upon this question of the assumption of risk, it is hardly necessary to refer to cases outside; and, with the exception of two or three cases, citations only will be made. The cases in which the facts are most nearly like the present case are *Mo. Pac. Rly. Co. v. Somers*, 9 S. W. Rep. 741, and *Lovejoy v. B. & L. Rld. Co.*, 125 Mass. 79.

For authorities upon the principle that when an employé knows that the appliances with which he works are defective, and continues his work without objection, he will be deemed to have assumed the risk of such defects, and cannot recover for an injury resulting therefrom, see the following cases: *Smith v. Winona & St. Paul Rld. Co.*, 43 N. W. Rep. 968; *Tuttle v. D. G. H. & M. Rly. Co.*, 102 U. S. 189; *Kelley v. C. M. & St. P. Rld. Co.*, 53 Wis. 74; *Naylor v. C. & N. W. Rly. Co.*, 5 Am. & Eng. Rly. Cases, 460; Pierce on Railroads, 379; *Hawk v. Pa. Rld. Co.*, 31 Am. & Eng. Rly. Cases, 268; *Wormell v. M. C. Rld. Co.*, 31 id. 272; *N. & W. Rld. Co. v. Jackson*, 8 S. E. Rep. 370; *Kennedy v. Pa. Rly. Co.*, 17 Atl. Rep. 7; *Brossman v. L. V. Rld. Co.*, 6 id. 226; *P. & R. Rld. Co. v. Hughes*, 33 Am. & Eng. Rly. Cases, 348; *I. & St. L. Rly. Co. v. Watson*, 33 id. 334; *Naylor v. N. Y. C. & H. R. Rld. Co.*, 33 Fed. Rep. 801; *Ladd v. N. B. Rld. Co.*, 119 Mass. 412; Wharton on Negligence, 214; *Sullivan v. India Mfg. Co.*, 113 Mass. 396; *Fleming v. St. P. & D. Rly. Co.*, 6 N. W. Rep. 448; *Gibson v. Railroad Co.*, 63 N. Y. 449; *Wells v. B. C. R. & N. Rld. Co.*, 9 N. W. Rep. 369.

The court erred in refusing to give the sixth instruction requested by the defendant. That instruction is as follows:

"If the employé sustaining an injury through deficient or improper machinery furnished by his employer has the same knowledge or means of knowledge of the deficiencies or improprieties referred to as his employer, he cannot sustain an action for the injury, but will be held to have voluntarily assumed all the risk of the employment incurred by the defective or improper machinery used in the work."

This instruction was warranted by the decision of this court in the Rush case; and upon the question that if the employé has the same knowledge or the same means of knowledge of a defect that the employer has he assumes the risk of it, see *Wright v. Railway Co.*, 25 N. Y. 562, 566; *Hayden v. Manufacturing Co.*, 29 Conn. 548; Pierce on Railroads, 379.

*Riggs & Nevison*, for defendant in error:

"The master is not bound to have the instrumentalities of his business absolutely safe, but he is bound to have them as safe as ordinary care on his part can provide, and this extends not only to the original act of providing them, but also to keeping them in repair." *Railroad Co. v. Moore*, 29 Kas. 644; *Railroad Co. v. McKee*, 37 id. 592; *Railroad Co. v. Irwin*, 37 id. 709. See, also, *Railroad Co. v. Morgan*, 43 id. 1; Wood, Mas. & S., § 359.

"The measure of the phrase 'ordinary care,' and of the master's duty, is to be estimated from the nature of the implement, the use to which it is to be devoted, and the consequences to the servant in case it should prove defective, and therefore is a question of fact in each case for the jury." Wood, Mas. & S., §§ 329, 359; *Fletcher v. Railroad Co.*, 1 Allen, 9; *Railroad Co. v. Ogier*, 35 Pa. St. 60. See, also, *Hough v. Railroad Co.*, 100 U. S. 213, 217; *B. & O. Rld. Co. v. Rowan*, 104 Ind. 94; *Snow v. Railroad Co.*, 8 Allen (Mass.), 441; *Patterson v. P. & C. Rld. Co.*, 76 Pa. St. 389; *Stackus v. N. Y. C. &c. Rld. Co.*, 79 N. Y. 464; *Hartadner*

*v. H. R. R. Br. Co.*, 80 id. 622; *Payne v. Troy & Bost. Rld. Co.*, 83 id. 572.

In the case of *Railroad Co. v. Peavey*, 34 Kas. 472, the court held "that the plaintiff had full knowledge of all these things," and which is not true of Monden. He had never been over this branch before, and the situation as he knew it on the other branches would have warranted him in resting under the belief that the junctions were in some way protected by the situation or by markers, and it was for the jury to say how far he was bound to know, or suspect, by going over the branch that morning, or from his experiences on the other branches.

In the case of *Rush v. Railroad Co.*, 36 Kas. 129, the court finds that the guard rails were not different from any other of its guard rails in its 5,000 miles of track, and that O'Conner had the same means of knowing the condition of the tracks in the vicinity where he got hurt that the company had; and which makes it an altogether different case.

The case of *Railroad Co. v. Kanaley*, 39 Kas. 1, is not in point for the other side, but we claim it is for us.

The railroad company asserts that the court erred in refusing to give the sixth instruction asked by it. The court gave substantially just such an instruction: "If he knows, or in the exercise of proper care would know, that he is in a perilous position, he is bound to exercise caution and diligence commensurate with the apparent danger. . . . The law demands of every such person the employment of all reasonable means to foresee and prevent danger."

Opinion by GREEN, C.: This was an action brought by Susan A. Monden, administratrix of the estate of John R. Monden, in the district court of Douglas county, against the Union Pacific Railway Company, to recover $10,000 damages for the death of the decedent, caused, as is alleged, by the negligence of the railway company. A trial was had before the court and a jury, and a verdict was returned in favor of the plaintiff for the sum of $9,000. Judgment was

entered upon the verdict and special findings. The case is brought to this court to reverse such judgment.

The decedent was a locomotive engineer, and had been in the employ of the railway company for three years prior to September 2, 1887, and lived at Wamego. On the morning of the date mentioned he came home from a run about the hour of 4 o'clock, and sometime in the forenoon of the same day he was summoned by the regular caller to go out on another run. He was informed that he was wanted to go to Lansing for a train of coal. The engineer replied that he was not acquainted with the Leavenworth branch; that he had never been over that road, and that he would not go; that he had no right on that branch. The decedent left his home, and started from Wamego with an engine, caboose, and a train crew consisting of a conductor, fireman, and two brakemen, about 2 o'clock in the afternoon of the same day, and arrived at Lansing about 5 o'clock in the evening. The train was made up of 12 loaded coal cars, an engine, and caboose, and started back from Lansing about dusk. The five cars next to the engine were controlled by air brakes. On the return trip, stops were made at Fairmount, Big Stranger, and Tonganoxie. The train passed Reno, about six miles from the junction with the main line, without stopping. There is a descending grade from the latter station to the junction. The conductor, with the aid of the rear brakeman, set the cupola brake in the caboose about a mile east of the junction, and gave a signal with his lantern to the engineer to stop about a quarter of a mile from the junction. The air brakes were set by the engineer about three car lengths from the junction. No signals were given by the engineer. The engine and cars ran off the track at the junction, and the engineer, fireman and head brakeman were killed. The accident occurred about 9 o'clock, and the night was very dark.

The special questions and answers returned by the jury are as follows:

" 1. Was John R. Monden, at the time he came to his death,

exercising ordinary care under the circumstances which surrounded him? A. Yes.

"2. Was the Union Pacific Railway Company, defendant, guilty of negligence in not providing a junction marker, or some other signal, to indicate the approach of trains to the junction at which the accident occurred? A. Yes.

"3. Was the defendant, the Union Pacific Railway Company, guilty of negligence toward the said John R. Monden on the 2d day of September, 1887, aside from the failure to provide junction markers? A. Yes.

"4. Was the death of John R. Monden, on the 2d day of September, caused by the negligence of the defendant, the Union Pacific Railway Company? A. Yes."

Questions submitted by defendant:

"1. Had not John R. Monden been running as an engineer for defendant about three years at the time he was killed? A. Yes.

"2. Had not John R. Monden run as engineer during those three years on defendant's main line, between Kansas City and Wamego, and between Wamego and Brookville, and also on the Manhattan & Blue Valley branch, the Junction City & Fort Kearney branch, the Solomon branch, the McPherson branch, and the Salina, Lincoln & Western branch? If you find that he had not run over the main line and branches above mentioned, state which ones he had and which he had not run over. A. Yes; as we remember the testimony.

"3. On the day before Monden was killed, did he not run as engineer on defendant's main line between Kansas City and Wamego, passing over the switch where he was afterwards killed? A. Yes.

"4. Were not stub switches in general use all over the part of defendant's railroad upon which Monden run, with the exception of at Topeka, all the time Monden was running upon the road? A. Yes.

"5. Did the defendant have switch lights at any of its junctions of the branches with the main line while Monden was running upon defendant's road? A. Yes.

"6. If you answer the preceding question in the affirmative, state at what junction points the defendant had such switch lights. A. At Manhattan.

"7. Did the defendant, at any of the time when Monden

was running on its road, have junction markers on any of its branches to indicate to an engineer that he was approaching a junction? A. No; unless there was one at or near the northeast end of the Leavenworth branch.

"8. If you answer the preceding question in the affirmative, name all of the branches upon which the defendant had such markers, and state the junctions near which they were located. [Not answered.]

"9. Was not the rule, 'first in, first out,' applicable to engineers, and in force on defendant's railroad for a considerable time before Monden was killed? A. Yes.

"10. Was not Monden running an extra freight at the time he was killed? A. Yes.

"11. About how many miles an hour was Monden running at the time, and immediately before he was killed? A. About 18 miles.

"12. Did not Monden, at the time he was killed, have in his possession a time table, showing the time of the trains on the Kansas division of the defendant's railroad? A. Yes.

"13. Was there not in the back of said time table general regulations personal to employés? A. Yes.

"14. By one of said regulations was it not provided that extra freight trains must not exceed a speed of 18 miles an hour on any portion of the road, without special order from the superintendent? A. Yes.

"15. Did not Monden, on the day he was killed, go from Wamego to Lansing, passing over the Leavenworth branch in the daytime? A. Yes.

"16. If there had been a suitable junction marker, properly located, on the Leavenworth branch, approaching Lawrence junction, when Monden was killed, would he have seen it as he went toward the junction on that trip? A. Yes."

The plaintiff relied upon four alleged acts of negligence upon the part of the railway company: First, that the defendant did not have a board at some distance from the junction of the Leavenworth branch indicating the distance to the junction; second, that the railway company did not have a switch light at the junction; third, that the company had a stub switch at the junction; and, fourth, the company had a rule in regard to its engineers, firemen, and brakemen, by which it might happen that the employés would be called to

go over parts of the company's road with which they were unacquainted. The court, in its instructions to the jury, virtually eliminated all of the grounds of negligence from the case except the first. In relation to the stub switch, the court said, in its instructions to the jury:

"As to the 'stub switch,' so called, the evidence shows such switches were in common use on the whole line when Monden entered the employment, and if you find that he knew that fact, *or in the performance of his duties must have known it*, then, entering upon and continuing in the service knowing of such appliance, even though you find it one not reasonably safe, would defeat the plaintiff's claim to recover for an injury happening to Mr. Monden through that agency alone."

As to the fourth ground of negligence, the court said:

"With regard to the rule 'first in, first out,' as it is termed, it is for you to say, upon all the evidence, whether it was a reasonable one, within the power to make such reasonable rules as I have before stated. But whether reasonable or not, if he procured it to be made, or assented to it, while acting in behalf of the other engineers, and in his own behalf, he could not complain of its operation, and of course the plaintiff can have no greater rights than he could himself. Or, if he did not so assent to it, and yet knew of its existence and continued in the service without objection, knowing that he was subject to its operation, and had full knowledge of its effect, then the injury happening because of such operation and effect of the rule alone could not be the basis of an action for damages against the company."

Upon the controlling ground of negligence, the court said:

"With respect to the signs or marks to designate the approach to a junction and switch, it is submitted to you as a matter of fact, upon all the evidence: First, whether it was reasonably necessary, within the rules stated, to have such marks or signs — in other words, whether it was reasonably safe to operate the road without them, and the company was negligent in not providing them — and especially, whether it was negligent in not having such mark or sign at or near the Lawrence junction as claimed; and, second, if it was negligent in that respect, did Monden's injuries result directly therefrom; and, third, if you so find, *then did he, previous to going out upon that trip,* have knowledge that there were no

such marks or signs, and consequent danger, and so volun-
tarily assumed the risk? You should consider, in this con-
nection, his course of employment with the company; his
knowledge of the defendant's railroad and appliances; his
experience upon the other branches as well as upon the main
line, and what knowledge he had acquired, or probably had
acquired, as to the absence of such signs or marks; and then
you must say, as a matter of fact, whether he had a reasonable
right, in view of all the facts proven, to rely upon finding
such marks or signs in time to stop the train before reaching
the junction. If he did, and observed due care otherwise,
there may be a recovery, if the absence of such mark caused
the injury; otherwise, there can be no recovery on that
ground. If on a track with which he was not acquainted, in
the night, and uncertain as to his whereabouts, he was bound
to use his senses, and the means at hand, and adopt such pre-
cautions for his own safety, and that of the crew and train, as
engineers of ordinary and reasonable prudence would have
taken in the same situation. If he failed in this, and this
contributed to the injury, then, of course, there can be no re-
covery. You should consider the rate of speed he was run-
ning, his knowledge to be derived from the time card, from
the surrounding objects, from the operation of his engine, and
all the evidence bearing upon the matter, and then say, as a
matter of fact, whether he was exercising proper care; in
other words, whether he did what a reasonably prudent man
in the same employment would have done in the same cir-
cumstances."

This instruction was duly excepted to, and complaint is
particularly made of it. In overruling the motion of the
defendant for a new trial, the court said:

"Had the argument that has just been made been heard
when the charge was written, some expressions in it would
have been changed. It is exceedingly difficult in framing in-
structions to use language upon every proposition submitted
not subject to criticism. The supreme court, however, recog-
nizes the fact that some inaccuracy will occur; and unless the
error, if error it be, affects the substantial rights of the party
complaining, it is disregarded. It is urged that when the
court undertook to define the rule with respect to an employé
entering upon or continuing in the service, knowing of de-
fective appliances, or of the failure to provide such as are

reasonably necessary, it should have been also stated that if the employé, in the exercise of reasonable care, ought to have known, etc., the same rule would apply; and the proposition is correct. The defendant presented several requests, in substance the same, referring to this matter of knowledge, one of which was given, and which, I believe, did not contain the clause the omission of which is complained of. I do not think this would cure an error in refusing to give another pertinent request containing such clause, when such error is material, but it may serve to explain the omission. I think, however, in this case, that it is not material.

"As to the stub switch, and the rule 'first in, first out,' complained of in the petition, there was no question of the actual knowledge of the deceased, and these matters were substantially withdrawn from the jury. *And as to the want of junction markers on the Leavenworth branch, there can be no claim that he had any knowledge about it,* and the only question about that is, whether the absence of such markers on the main line and other branches is sufficient in law to charge him with knowledge of their absence here. Now, as to the main line, it must be remembered that the switches were never left open connecting with the branches, so as to break the continuity of the track. When a train passed from the main line to a branch, or *vice versa,* the switch was immediately turned so as to leave the main track continuous; hence, markers to designate junctions were not necessary to operatives running on the main line. As to the other branches, the evidence shows that they made connections with the main line at cities or towns, running partly through the same (and in one case there was a bridge); thus the junctions were sufficiently marked without specific signs. The necessity of such a mark must be considered with reference to the location and surroundings. In this case, unlike other junctions on this road, there was nothing but some adjacent farm houses, and trees and lights, which, however, were distant, in Lawrence, and the distance to which might not be correctly judged by an engineer for the first time.

"In answer to the plaintiff's third question, the jury say that defendant was guilty of negligence besides its failure to provide junction markers. Now if this stood alone, the verdict could not be sustained. The Rush case, whatever may be decisions elsewhere, precludes a recovery on account of any supposed negligence growing out of the use of the stub switch,

for it was well known to the deceased. Coupled, however, with the principal matter complained of, (the neglect to provide such markers,) should be considered the fact that a crew unused to the branch was sent out with an engineer who had never been over it, and that there was no switch light at the junction where, as we have seen, there were no other marks or signs to denote its presence. The absence of switch lights on the road generally was, it is true, well known; but the question is—and I think it was fairly presented—whether it was negligence to send out a raw crew to go over such a branch and junction under just these circumstances, with no junction marker or switch light or other objects or signs to give notice of the approach to the junction. I do not think the absence of switch lights will authorize a recovery, alone, when the employé knows the fact; nor is the sending out of a crew unused to the road of itself negligence; but I am inclined to think that these matters being combined with the absence of all signs, is sufficient to submit to a jury and to authorize a recovery, and that, under the circumstances of this particular case, the deceased was not chargeable with such knowledge as will necessarily preclude a recovery. Without pursuing the subject further—and much more might be said —I am constrained to hold that the verdict should stand. The motions are therefore overruled, and judgment will be entered upon the general verdict."

It is contended by the plaintiff in error that the court made a distinction between the junction marker and the stub switch when it said to the jury, that if when Monden entered the employment he knew that the stub switch was in common use on the whole line, *or in the performance of his duties must* have known it, then entering upon and continuing in the service, knowing of such appliance, even though it was found to be one not reasonably safe, would defeat the plaintiff's right to recover for any injury happening to Monden through that agency alone, while it did not apply the same rule to the junction marker. The contention is, that the court should have said to the jury:

"Third, if you so find, then did he, previous to going out upon that trip, have knowledge, *or in the exercise of reasonable care ought to have known,* that there were no such marks or

signs, and consequent danger, and so voluntarily assumed the risk ? "

It was established by the evidence that an engineer running a train, especially if he was going over a new road, should pay attention to the landmarks, and should be looking for them; that a junction marker is the best kind of a landmark, and that nothing can fully take the place of it; that an engineer in passing over a railroad once in the daytime might, if he was very particular, detect landmarks by which he could be safely guided on his return trip at night. While it would hardly be practicable, still an engineer might, if he was very particular, select objects by which he could be guided. It is an engineer's duty to be particular in running over a railroad that he knows nothing about; it is his business to be more particular than where he knows the road. The question presents itself, then, whether under the evidence the defendant was entitled to have the same rule applied with reference to the switch marker that was given in regard to the stub switch. It was in evidence that Monden had been over the main line a number of times. In the performance of his duties as an engineer, he had passed over the Leavenworth branch the same afternoon he was killed. The instruction complained of contemplates a knowledge of the markers, or *the want of them, before Monden started on the trip.* Should not the instructions have gone further, and required the exercise of reasonable care in the observance of markers or the want of them during the trip? He should have exercised his faculties as he passed over the road for the first time. The jury found that if there had been a suitable junction marker properly located on the Leavenworth branch, approaching the Lawrence junction, when Monden was killed, he could have seen it as he went towards the junction. He could have observed the same as he passed over the branch going to Lansing. It was said by this court, in the case of *Rush v. Mo. Pac. Rly. Co.,* 36 Kas. 136:

" If the servant has full knowledge of the danger, and continues in the master's employment without complaint, recov-

ering from the master full pay for his services, he assumes the risk himself of the known danger, and waives any negligence that might otherwise be imputable to the master."

The rule has been stated by the supreme court of Connecticut, in *Hayden v. Manufacturing Co.*, 29 Conn. 552:

"Knowledge of the condition of things on the part of the servant, and his continuance in the service after such knowledge, exempts the master in every case from all liability to the servant for an injury growing out of the condition of things. This general proposition is fully sustained by the authorities."

Applying these principles to the case under consideration, when and how should knowledge of the existence of such danger be obtained? The court said to the jury that if the deceased, "*previous to going out upon the trip when he was killed,* had knowledge that there was no marks or signs, and consequent danger, and so voluntarily assumed the risk." Should not the court have instructed further: "Or in the performance of his duties must have known that there were no markers?" We think the instruction is subject to the criticism that it limited the knowledge of the decedent to the time previous to the trip upon which he was killed. Under the evidence in this case, such a limitation should not have been applied. If he obtained such knowledge in the performance of his duties at any time before the accident, it would be the same. The evidence established the fact that Monden was a competent engineer; that he had been over the main line and all of the branches except the one upon which he was killed. He had run on the road for three years. The engineers who testified agreed that it was the duty of an engineer in going over a railroad for the first time to observe objects and select marks to guide him in returning. This was a part of his duty, and in the performance of it he must obtain knowledge as to the landmarks along the same. Under the facts of this case, we are of the opinion that the court should have applied the same rule in regard to the switch markers that was given in regard to the stub switch.

The court instructed the jury:

"But when the defect is one to which he is not exposed in the ordinary course of his employment, but is one which he is required at the time to immediately encounter by a special command of the employer or superior, without time for reflection or choice, he may obey the order without forfeiting his right to recover in case injury results; and so if the danger is not obvious, but is unknown to the employé and is known to the company."

While perhaps not material error, we do not think the instruction is applicable to the facts in this case. Monden was not obliged to go out on the run. He had several hours to consider the matter before he started on the trip, and he made no objection to his superior officers.

Complaint is made of the giving of other instructions and the refusal to give certain instructions requested, but we are of the opinion that with the exceptions noted the instructions need not be commented upon.

It is recommended that the judgment of the district court be reversed, and that a new trial be granted.

By the Court: It is so ordered.

All the Justices concurring.